Steven A. Groode, Bar No. 210500
sgroode@littler.com
Jannine E. Kranz, Bar No. 272389
jkranz@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, California  90067.3107
Telephone: 310.553.0308
Fax No.: 310.553.5583

Attorneys for Defendants
MEDLINE INDUSTRIES, INC., MEDLINE INDUSTRIES HOLDINGS, L.P., and MEDLINE INDUSTRIES, LP

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEJA NAIR, on behalf of herself and all other similarly situated, and as an "aggrieved employee" on behalf of other "aggrieved employees" under the Labor Code Practice Attorneys General Act of 2004,<br><br>Plaintiff,<br><br>v.<br><br>MEDLINE INDUSTRIES, INC., an Illinois corporation; MEDLINE INDUSTRIES HOLDINGS, L. P., a Delaware limited partnership; MEDLINE INDUSTRIES, LP, an Illinois limited partnership; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. SECTIONS 1332 (CAFA), 1441, and 1446**<br><br>Complaint Filed: December 22, 2021<br>FAC Filed: January 10, 2022<br>Superior Court County of San Joaquin |

TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO PLAINTIFF DEJA NAIR AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants MEDLINE INDUSTRIES, INC., MEDLINE INDUSTRIES HOLDINGS, L.P. and MEDLINE INDUSTRIES, LP ("Defendants") remove the above-captioned action from the Superior Court of the State of California, County of San Joaquin, to the United States District Court, Eastern District of California, pursuant to 28 U.S.C. sections 1332(d) (Class Action Fairness Act of 2005), 1441(b), and 1446 on the following grounds:

## I. STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §1332(d). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II. VENUE

2. This action was filed in the Superior Court for the State of California, County of San Joaquin. Venue properly lies in the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. sections 84(c)(2), 1391, 1441, and 1446; Eastern District Local Rule 120(d).

## III. PLEADINGS, PROCESS, AND ORDERS

3. On December 22, 2021, Plaintiff Deja Nair ("Plaintiff") filed a Class Action Complaint against Defendant in San Joaquin County Superior Court, titled: *DEJA NAIR, on behalf of herself and all other similarly situated, vs. MEDLINE INDUSTRIES, INC., an Illinois corporation; MEDLINE INDUSTRIES HOLDINGS, L. P., a Delaware limited partnership; MEDLINE INDUSTRIES, LP, an Illinois limited partnership; and DOES 1-50, inclusive,* bearing Case No. STK-CV-UOE-2021-0011669 (the "Complaint"). Shortly thereafter, on January 10, 2022, Plaintiff filed her First Amended Complaint (the "FAC"), o*n behalf of herself and on behalf of herself and all others similarly situated,*

*and as an "aggrieved employee" on behalf of other "aggrieved employees" under the Labor Code Private Attorneys General Act of 2004,* which asserts the following seven causes of action: (1) Failure to Pay All Wages Earned in violation of Cal. Labor Code §§ 510, 1194, 1197 and 1198; (2) Failure to Provide Meal Periods in violation of Cal. Labor Code §§ 226.7, 512 and 1198; (3) Failure to Provide Rest Breaks in violation of Cal. Labor Code §§ 226.7 and 1198; (4) Wage Statement Penalties in violation of Cal. Labor Code § 226; (5) Waiting Time Penalties in violation of Cal. Labor Code §§ 201-203; (6) Unfair Competition in violation of Cal. Labor Code § 17200 *et. seq.*; and (7) Civil Penalties in violation of Cal. Labor Code § 2698, *et seq.*

4. On January 19, 2022, each Defendant was served with the FAC, along with copies of the Summons on FAC, Summons on Complaint, Civil Case Cover Sheet, Complaint, Notice of Case Assignment and Notice of Hearing, Alternative Dispute Resolution Information Packet, Case Management Statement and Stipulation and Order to Participate in ADR via personal service. A true and correct copy of the FAC, Summons on FAC, Summons on Complaint, Civil Case Cover Sheet, Complaint, Notice of Case Assignment and Notice of Hearing, Alternative Dispute Resolution Information Packet, Case Management Statement and Stipulation and Order to Participate in ADR served upon each Defendant is attached as **Exhibit A**.

5. On February 17, 2022, Defendants filed their Answer in the Superior Court of the State of California, County of San Joaquin. A true and correct copy of Defendants' Answer is attached as **Exhibit B**.

6. Pursuant to 28 U.S.C. § 1446(d), the attached **Exhibits A** and **B** constitute all process, pleadings and orders served on Defendants or filed or received by Defendants in this action. To Defendants' knowledge, no further process, pleadings, or orders related to this case have been filed in the Superior Court of the State of California, County of San Joaquin, or served by any party. To Defendants' knowledge, no proceedings related hereto have been heard in the Superior Court of the State of California, County of San Joaquin.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

3   DEFENDANTS' NOTICE OF REMOVAL

### IV. TIMELINESS OF REMOVAL

7. An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the Defendants within 30 days of service on defendant of the initial pleading. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). Removal of this action is timely because this Notice of Removal has been filed within 30 days from January 19, 2022, when all Defendants were served with the Complaint and the FAC. 28 U.S.C. § 1446(b).

### V. NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

8. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Eastern District of California, the undersigned is providing written notice of such filing to Plaintiff DEJA NAIR's counsel of record: David G. Spivak, Esq., Maralle Messrelian, Esq. and Sara Brown, Esq. of The Spivak Law Firm, 16530 Ventura Boulevard, Suite 203, Encino, CA 91436 and Walter L. Haines, Esq. United Employees Law Group, 4276 Katella Avenue, Suite 301, Los Alamitos, CA 90720. In addition, a copy of Defendants' Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of San Joaquin.

### VI. CAFA JURISDICTION

9. CAFA grants United States district courts original jurisdiction over: (a) civil class action lawsuits filed under federal or state law; (b) where the alleged class is comprised of at least 100 individuals; (c) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (d) where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice of Removal.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

4   DEFENDANTS' NOTICE OF REMOVAL

### A. Plaintiff Filed A Class Action Under State Law

10. Plaintiff filed her action as a class and representative action based on alleged violations of California state law. Complaint ¶¶ 1-2, Exh. A, Prayer for Relief.

### B. The Proposed Class Contains At Least 100 Members

11. 28 U.S.C. § 1332(d)(5)(B) states that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."

12. Plaintiff filed this action on behalf of "[a]ll persons Defendants employed in California as hourly, non-exempt workers, including warehouse operators, individuals performing work comparable to the aforementioned, compensated comparably to the aforementioned, and individuals in similar positions" at any time between December 22, 2017 to the present. Complaint ¶ 12, Exh. A. In Plaintiff's own words, "the Class Members are so numerous that the individual joinder of each individual Class Member is impractical." Complaint ¶ 14, Exh. A.

13. Based on a review of Defendant Medline Industries, LP's ("Medline") records[1], it has employed at least 6,243 non-exempt employees in its California locations since December 22, 2017 to February 10, 2022. Of those, 4,571 non-exempt employees – including Plaintiff Nair – worked in Medline's operational division. As such, both the Complaint and Defendant's internal records demonstrate that there are well over 100 putative class members in this case.

### C. Defendant Is Not A Governmental Entity

14. Under 28 U.S.C. § 1332(d)(5)(A), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

15. Each Defendant is a corporation, not a state, state official, or other government entity exempt from CAFA.

---

[1] Defendant Medline Industries, LP is formerly known as "Medline Industries, Inc." Defendant Medline Industries Holdings, L.P. does not employ any employees in California.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

5       DEFENDANTS' NOTICE OF REMOVAL

### D. There Is Diversity Between At Least One Class Member And One Defendant

16. CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes, and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *See Strotek Corp. v. Air Trans. Ass'n of Am.*, 300 F.3d 1129, 1130-1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff and Defendants are citizens of different states.

17. Here, upon information and belief, Plaintiff resided in and was a California citizen at the time she commenced this action and at the time of removal. Plaintiff alleges that she is a resident of California and was employed by Defendants in Tracy, California "in or around July 2021" to August 18, 2021. (Complaint ¶¶ 3, 21, Exh. A.) Plaintiff then filed the present action in San Joaquin County. Defendants are informed and believe that Plaintiff, at the time this action was commenced, was and is a citizen and resident of the State of California. *See Albrecht v. Lund,* 845 F.2d 193, 194-95 (9th Cir. 1988) (finding citizenship requirement satisfied where plaintiff's complaint contained allegations consistent with diversity and plaintiff failed to contest the petition for removal); *see also Anderson v. Watts*, 138 U.S. 694, 706 ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary").

18. Defendants are not citizens of the State of California. For purposes of removal, an unincorporated association such as a limited partnership is deemed a citizen of "the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see also Abrego v. Dow Chem. Co.,* 443 F.3d 676, 684 (9th Cir. 2006) (stating that CAFA "departs from the rule that frequently destroys diversity jurisdiction, that a limited partnership's or unincorporated association's citizenship for diversity purposes can be determined only by reference to all of the entity's members.") (citations and internal quotations omitted).

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

6   DEFENDANTS' NOTICE OF REMOVAL

19.     Plaintiff correctly pled that Defendant Medline Industries, LP, formerly known as Medline Industries, Inc., is an Illinois limited partnership.  Medline Industries, LP's principal place of business is located in Illinois, where it operates its business and the majority of its officers work from its headquarters at 3 Lakes Drive, Northfield, Illinois 60093.  (Complaint ¶ 6, Exh. A.)

20.     Plaintiff correctly pled that Defendant Medline Industries Holdings, L.P. is a Delaware limited partnership.  (Complaint ¶ 5, Exh. A.)  Medline Industries Holdings, L.P.'s principal place of business is located in Illinois, where it operates its business.

21.     The presence of Doe defendants in this case has no bearing on diversity with respect to removal.  *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

22.     Accordingly, the named Plaintiff is a citizen of a state (California) different from Defendants (Illinois and Delaware), and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

### E.     The Amount In Controversy Exceeds $5,000,000[2]

23.     "Under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).  Where, as here, the Complaint is silent as to the amount in controversy, a preponderance of the evidence standard applies.  *See Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 397 (9th Cir. 2010), *citing Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).

24.     Although Defendants expressly deny any liability for the damages alleged in Plaintiff's Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied the Court must presume that Plaintiff will prevail on her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)) (stating that the amount in controversy analysis

---

[2] The alleged damages calculations contained herein are for purposes of removal only.  Defendants deny that Plaintiff and/or the putative class are entitled to any relief whatsoever and expressly reserve the right to challenge Plaintiff's alleged damages in this case.

presumes that "plaintiff prevails on liability"). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [defendant's] liability." *Lewis*, *supra*, 627 F. 3d at 400 (9th Cir. 2010). Stated differently, the ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what defendants might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Investments, Inc.* 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in controversy).

25. CAFA authorizes the removal of class actions in which, among other factors mentioned above, the amount in controversy for all class members exceeds $5 million. See 28 U.S.C. § 1332(d). Here, the Complaint places more than $5 million in controversy.

26. Rremoval statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. §1446(a). The United States Supreme Court in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), recognized that "as specified in section 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id*. Otherwise, "the defendant's amount in controversy allegation should be accepted" just as plaintiff's amount in controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 553. "[N]o antiremoval presumption attends cases invoking CAFA." *Id*. at 554.

27. Here, Plaintiff does not allege the amount in controversy. When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so, and the notice of removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Company LLC*, 135 S. Ct. at 554.

28. While Defendants deny Plaintiff's claims of wrongdoing and deny her request for relief therein, as specifically outlined below, the factual allegations in Plaintiff's Complaint and the total

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

8   DEFENDANTS' NOTICE OF REMOVAL

amount of penalties, attorneys' fees, and other monetary relief at issue in this action clearly demonstrate that the total amount in dispute is far in excess of this Court's jurisdictional minimum. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999) (facts presented in notice of removal, combined with plaintiffs' allegations, sufficient to support finding that jurisdictional limits satisfied). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [as to CAFA's amount-in controversy requirement], the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

29. Plaintiff seeks to recover damages and penalties for unpaid wages, including missed meal periods and rest break premium wages, as well as for inaccurate wages statements and for failure to timely pay wages upon separation. Complaint ¶¶ 2, 94 (A) – (E), Prayer for Relief, Exh. A. Further, Plaintiff's Complaint alleges a cause of action for violation of the Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.* Complaint, ¶¶ 82-87. Alleging a UCL violation may extend the statute of limitations for Plaintiff's and Class Members' meal and rest period claims as well as the unpaid wages claims from three to four years from the filing of the Complaint, which in this case extends the statute of limitations to December 22, 2017. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

30. For purposes of removal, Defendants must assume (without conceding) the truth of Plaintiff's allegations for purposes of assessing amount in controversy. Based on a preliminary review of its records, Defendant Medline has employed at least 6,241 non-exempt employees, of which 4,572 non-exempt operational employees (including Plaintiff), in its California locations since December 22, 2017.

### 1. Amount In Controversy – Plaintiff's Unpaid Wages Claim

31. In her First Cause of Action, Plaintiff alleges that Defendants knowingly and willfully failed to play Plaintiff and Class Members for all hours worked "including, but not limited to" work performed during on-duty meal periods. Complaint ¶ 39. Plaintiff alleges that Defendants maintained a "policy and/or practice, or lack thereof" which resulted in Defendants' failure to compensate Plaintiff

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

9   DEFENDANTS' NOTICE OF REMOVAL

1  and Class Members for all hours worked. Complaint ¶ 40. As a result, Plaintiff seeks unpaid wages, as well as interest, costs and attorneys' fees. Complaint, Prayer for Relief.

32. For purposes of removal only, based on a preliminary review of Defendant Medline's records, the putative class of approximately 6,243 non-exempt employees, worked during 226,521 workweeks since December 22, 2017. If narrowed to operations hourly employees only, there are 4,571 non-exempt operational employees (including Plaintiff) who worked 147,060 workweeks since December 22, 2017. The approximate average hourly rate for non-exempt employees during the class period is $18.56. Although Plaintiff's unpaid wages allegation references both minimum wage and overtime hours, for removal purposes only, Defendants will presume that the off-the-clock work at issue should be paid at the average hourly rate and not the overtime rate[3].

33. While Defendants contend that Plaintiff's claim for unpaid wages is without merit, using a conservative estimate of just one (1) hour of unpaid off-the-clock work per work week based on Plaintiff's allegations, the amount placed in controversy for the unpaid wage claim for 6,243 non-exempt employees totals **$4,204,229.76** (226,521 workweeks * 1 hour per workweek * $18.56 = $4,204,229.76). For the subset of 4,571 non-exempt operations employees, that total is **$2,729,433.60** (147,060 workweeks * 1 hour per workweek * $18.56 = **$2,729,433.60**). *Herrera v. Carmax Auto Superstores California, LLC*, EDCV-14-776-MWF (VBKx), 2014 WL 12586254, at *6 (C.D. Cal. Jun. 12, 2014) ("Defendant cannot be expected to produce evidence of how often overtime violations may occur. Defendant must be entitled to monetize this claim with a reasonable and conservative estimate.")

**2.   Amount In Controversy – Plaintiff's Meal Period Claim**

34. In her Second Cause of Action, Plaintiff alleges that Defendants intentionally failed to provide Plaintiff and Class Members with a compliant meal period, including the allegation that Plaintiff and Class Members were required to "clock out to create a record of a meal period before they had worked more than five hours in a workday" but that Defendants "required Plaintiff and all of the other Class Members to continue working to meet deadlines and goals and would not allow them

---

[3] Clearly, any overtime rate would be significantly higher than the more conservative average hourly rate Defendants used here.

to begin their meal period until more than five hours from the start of their shifts." Complaint, ¶ 48. Plaintiff further alleges that Defendants "had a policy, practice, or a lack of policy" which resulted in non-compliant meal periods. Complaint ¶ 50. Plaintiff seeks one additional hour of pay at the regular rate of compensation for each workday that a meal period was not provided. Complaint, ¶ 52.

35. California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a meal period was not provided. Cal. Labor Code § 226.7. The statutory period for recovery for a Labor Code section 226.7 claim pursued with a Business & Professions Code claim is four years. See Cal. Civ. Proc. Code § 338(a) (setting out a three-year limitations period); Cal. Bus. & Prof. Code § 17208 (explaining the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

36. For purposes of establishing the amount in controversy at removal, Defendants need not make Plaintiff's case for her, or prove the amount in controversy to a certainty. Rather, Defendants can rely on "reasonable assumptions" and a "chain of reasoning that includes assumptions" based on reasonable grounds to calculate the amount in controversy. *Anderson v. Starbucks Corp.,* 2020 WL 7779015, *8 (N.D. Cal. Dec. 31, 2020).

37. Plaintiff's Complaint alleges Defendants "had a policy, practice, or a lack of policy" which resulted in non-compliant meal periods, Complaint ¶ 50, which supports a conservative assumption of two (2) alleged missed meal periods per workweek. *See Behrazfar v. Unisys Corp.,* 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (when a defendant's calculations are "relatively conservative, made in good faith, and based on evidence whenever possible," the court should find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000."); *Oda v. Gucci Am., Inc.,* No. 2:14-CV-07469, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding that a 50% violation rate for meal and rest period violations was reasonable despite allegations that employees only "sometimes" were denied meal or rest periods); *Sadler v. Ensignal, Inc.*, No. 1:17-cv-00312-AWI-SAB, 2017 WL 2333528, at *5 (E.D. Cal. May 26, 2017) (where case removed on diversity grounds, accepting defendant's assumption that violation occurred once per day where plaintiff alleged "that he systematically worked for a period of more than five hours in a workday without being provided a mandatory, duty-free lunch").

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

11    DEFENDANTS' NOTICE OF REMOVAL

38.     While Defendants contend that Plaintiff and the putative class were provided compliant meal breaks, based on Plaintiff's allegations, and using a conservative estimate of two (2) missed meal periods per workweek, the amount placed in controversy for the meal period claim for 6,243 non-exempt employees totals **$8,408,459.52** (226,521 workweeks * 2 missed meal periods per workweek * $18.56 = $8,408,459.52).  For the subset of 4,571 non-exempt operations employees, that total is **$5,458,867.20** (147,060 workweeks * 2 missed meal periods per workweek * $18.56 = $4,838,274).

### 3.     Amount In Controversy – Plaintiff's Rest Break Claim

39.      In her Third Cause of Action, Plaintiff alleges that "Defendants intentionally failed to authorize and permit Plaintiff and the Class Members to take all 10-minute rest periods free from any work duties."  Complaint, ¶ 59.  Plaintiff also alleged that Defendants had a "policy, practice, or lack of a policy" which resulted in non-compliant rest breaks.  Complaint ¶¶ 62-64.  Plaintiff seeks one additional hour of pay at the employees' regular hourly rate of compensation for each workday that the rest break was not provided.  Complaint, ¶ 66.

40.     California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a rest period was not provided. Cal. Lab. Code § 226.7.

41.     While Defendants contend that Plaintiff and the putative class were authorized and permitted to take compliant rest breaks, based on Plaintiff's allegations, and using a conservative estimate of two (2) alleged missed rest breaks per workweek, the amount placed in controversy for the missed rest break claim for 6,243 non-exempt employees totals **$8,408,459.52** (226,521 workweeks * 2 missed rest periods per workweek * $18.56 = **$8,408,459.52**).  For the subset of 4,571 non-exempt operations employees, that total is **$5,458,867.20** (147,060 workweeks * 2 missed rest periods per workweek * $18.56 = $**5,458,867.20**).  *See Hull v. Mars Petcare US, Inc.,* No. ED CV-18-1021 PSG (KKx), 2018 WL 3583051, at *4-5 (C.D. Cal. Jul. 25, 2018) (finding reasonable assumption of three missed rest periods and meal periods per week).

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

12                    DEFENDANTS' NOTICE OF REMOVAL

### 4. Amount In Controversy—Plaintiff's Claim for Inaccurate Wage Statements

42. In her Fourth Cause of Action, Plaintiff alleges that Defendants failed to accurately identify each employee's "gross wages earned, net wages earned, the total hours worked, the corresponding number of hours worked at each rate" as well as other requirements. Complaint ¶ 71.

43. Labor Code Section 226(e) provides for a statutory penalty for violations of Labor Code § 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of $4,000 per employee. Cal. Labor Code § 226(a). The statutory period for Labor Code § 226(e) penalties is one year. Cal. Code Civ. Proc. § 340.

44. Defendants deny the validity and merit of Plaintiff's wage statement claim. For purposes of removal only, based on a review of its records, Defendant Medline has employed at least 3,658 non-exempt employees since December 17, 2020, for 61,457 pay periods and 2,608 non-exempt operations employees since December 17, 2020, for 43,136 pay periods. The average number of pay periods for all non-exempt employees is more than 16, and resulting average penalties are $1,550 ($50 * 1 + $100 * 15). For operations non-exempt employees, the average number of pay periods for all non-exempt employees is also more than 16, and resulting average penalties are $1,550 ($50 * 1 + $100 * 15). The total amount in controversy for Plaintiff's wage statement penalty claim is **$5,669,900** (3,658 employees * $1550) for all non-exempt employees or **$4,042,400** for the subset of operations non-exempt employees (2,608 employees * $1550).

### 5. Amount In Controversy – Plaintiff's Waiting Time Penalty Claim

45. In her Fifth Cause of Action, Plaintiff seeks waiting time penalties pursuant to California Labor Code sections 201, 202, and 203. Complaint, ¶¶ 74-81. The statute of limitations for Plaintiff's Labor Code section 203 waiting time penalty claim is three years. *Pineda v. Bank of Am., N.A.,* 50 Cal. 4th 1389, 1395 (2010) ("no one disputes that when an employee sues to recover both unpaid final wages and the resulting section 203 penalties, the suit is governed by the same three-year limitations period that would apply had the employee sued to recover only the unpaid wages").

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

13   DEFENDANTS' NOTICE OF REMOVAL

46. The Labor Code's penalty for failure to pay wages at termination is up to 30 days' wages for each employee. Cal. Labor Code § 203(a).

47. Defendants deny the merit of Plaintiff's waiting time penalty claim. But, for purposes of removal only, based on a review of its records, at least 2,680 employees have separated from Defendant Medline's employment since December 22, 2018. The average pay rate for non-exempt employees going back to 2017 is $18.56. Therefore, the amount in controversy for Plaintiff's waiting time penalties claim is approximately **$11,937,792** (2,680 employees * 8 hours * 30 days * $18.56 average rate of pay = $11,937,792).

### 6. Amount In Controversy—Plaintiff's Claim for Attorneys' Fees

48. Plaintiff seeks attorneys' fees and costs in her Complaint. Complaint, ¶ 97, Prayer for Relief, Exh. A. It is well-settled that claims for statutory attorneys' fees are to be included in the amount in controversy. *See*, *e.g.*, *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 549 U.S. 822 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

49. Moreover, the Ninth Circuit held that "the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018). This amount includes future attorneys' fees. *See Fritsch v. Swift Transp. Co. of Ariz. LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("there is no question that future [attorneys' fees] are 'at stake' in the litigation); *see also Schneider v. Ford Motor Co.*, 2018 U.S. App. LEXIS 34965, n. 4 (9th Cir. Dec. 12, 2018), *citing, Fritsch*, "The possibility that the putative class members could receive an award of attorneys' fees buttresses our conclusion that the amount in controversy exceeds $5 million").

50. In California, it is not uncommon for an attorneys' fee award to be 25 to 33 percent of a settlement or judgment. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties, and waiting time penalties); *Amaral v.*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

14   DEFENDANTS' NOTICE OF REMOVAL

*Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1216-1218 (2008) (affirming award of $727,000 in attorneys' fees plus a multiplier that equated to total fees of $1,199,550 in class case involving violations of a living wage ordinance, the California Labor Code, as well as unfair competition and contract claims); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

51. The attorneys' fees benchmark in the Ninth Circuit is 25 percent. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."); *Lo v. Oxnard Euro. Motors, LLC*, 2012 WL 1932283, at *3 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees awards a twenty-five percent of the common fund recovery.").

52. Based on Plaintiff's allegations, the amount placed in controversy for her claims totals **$38,628,841**. Taking into account attorneys' fees at the benchmark percentage of 25 percent further increases the amount placed in controversy by $9,657,210 for a total amount in controversy of **$48,286,051.30**.

### VII. SUMMARY

53. Removal of this action is therefore proper as the aggregate value of Plaintiff's class cause of action for non-compliant wage statements and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5 million. See 28 U.S.C. § 1332(d)(2):

| Plaintiff's Alleged Claim | Amount in Controversy<br>Entire CA Class | Amount in Controversy<br>Subset of Operations Employees Only |
| --- | --- | --- |
| Unpaid Wages | $4,204,230 | $2,729,434 |
| Meal Period Premiums | $8,408,460 | $5,458,867 |
| Rest Break Premiums | $8,408,460 | $5,458,867 |

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

15   DEFENDANTS' NOTICE OF REMOVAL

| Inaccurate Wage Statements | $5,669,900 | $4,042,400 |
| --- | --- | --- |
| Waiting Time Penalties | $11,937,792 | *Not yet calculated*[4] |
| Attorneys' Fees (25%) | $9,657,210 | $4,422,392 |
| **Amount in Controversy** | **$48,286,051** | **$22,111,960** |

54. Accordingly, although Defendants deny Plaintiff's claims as alleged in the Complaint, the jurisdictional minimum is satisfied for purposes of determining the amount in controversy, as it exceeds the $5,000,000 threshold required under CAFA.

55. WHEREFORE, Defendants hereby remove this action from the Superior Court of the State of California, County of San Joaquin, to the United States District Court for the Eastern District of California.

Dated:  February 18, 2022

Respectfully submitted,

LITTLER MENDELSON, P.C.

_____
Steven A. Groode
Jannine E. Kranz
Attorneys for Defendants
MEDLINE INDUSTRIES, INC., MEDLINE INDUSTRIES HOLDINGS, L.P., and MEDLINE INDUSTRIES, LP

4884-0824-0652.5 / 100115-1008

---

[4] Defendants have not yet calculated the number of terminated operations employees during the relevant timeframe, but even without this figure, the amount in controversy well exceeds $5 million.