UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEJA NAIR,

       Plaintiff,

v.

MEDLINE INDUSTRIES, INC., et al.,

       Defendants.

No.  2:22-cv-00331-DAD-JDP

ORDER DENYING DEFENDANTS'
MOTION TO COMPEL ARBITRATION OF
PLAINTIFF'S INDIVIDUAL CLAIMS AND
TO DISMISS PLAINTIFF'S NON-
INDIVIDUAL CLAIMS

(Doc. No. 15)

     This matter is before the court on defendants' motion to compel arbitration of plaintiff's individual claims and to dismiss all of plaintiff's non-individual claims.  (Doc. No. 15.)  On October 10, 2022, the court vacated the hearing on the pending motion.  (Doc. No. 23.)  Having reviewed the parties' briefing, the court finds defendants' motion suitable for a decision on the papers.  Local Rule 230(g).  For the reasons set forth below, defendants' motion will be denied.

**BACKGROUND**

     On December 22, 2021, plaintiff Deja Nair filed this putative class action in San Joaquin County Superior Court against defendant Medline Industries, Inc., defendant Medline Industries Holdings, LP, and defendant Medline Industries, LP (collectively, "defendants" or "Medline").  (Doc. No. 1-1 at 198.)  On January 10, 2022, plaintiff filed her operative first amended complaint ("FAC"), alleging various California wage and hour claims, a claim under California's Unfair

1

Competition Law, California Business and Professions Code §§ 17200, *et seq.*, and a claim under the Private Attorneys General Act of 2004, California Labor Code §§ 2698, *et seq.* (*Id.* at 2.) On February 18, 2022, defendants removed this action to this federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332. (Doc. No. 1 at ¶ 1.)

Plaintiff does not allege the nature of defendants' business in her complaint, but in defendants' pending motion, defendants state that they are "engaged in the manufacture, sale and distribution of various medical supplies and equipment and the provision of various medically related provider programs, in each case on a domestic and international basis." (Doc. No. 15-1 at 12.) Defendants further explain that they provide their clients "with medical supplies, equipment, and health services distributed all over the nation and internationally." (*Id.*) In her FAC, plaintiff alleges that she is a resident of California and worked as an hourly-paid, non-exempt employee for defendants from approximately July 2021 to August 2021. (Doc. No. 1-1 at 8, 47.) Specifically, plaintiff alleges that she was employed by defendants to work as a warehouse operator in Tracy, California. (*Id.* at 8.) Plaintiff seeks to represent a proposed class defined as:

> All persons [d]efendants employed in California as hourly, non-exempt workers, including warehouse operators, individuals performing work comparable to the aforementioned, compensated comparably to the aforementioned, and individuals in similar positions, at any time during the period beginning four years prior to the filing of this action and ending on the date that final judgment is entered in this action.

(*Id.* at 5–6.)

On August 8, 2022, defendants filed the pending motion to compel arbitration of plaintiff's individual claims and to dismiss plaintiff's non-individual claims, contending that on June 26, 2021, plaintiff executed an arbitration agreement with defendants, in which she agreed to arbitrate all claims arising out of her employment with defendants and forgo any class or representative claims against the company (the "Arbitration Agreement"). (Doc. Nos. 15-1 at 9–10; 15-3 at ¶ 10.) Based on this provision, defendants argue that this court must grant their motion to compel plaintiff to arbitrate her claims against them. (Doc. No. 15-1 at 19.) On September 22, 2022, plaintiff filed her opposition to defendants' motion, in which she contends that she is exempt from the Federal Arbitration Act ("FAA") because warehouse operators at

Medline engage in interstate commerce.  (Doc. No. 21 at 12.)  On September 30, 2022, defendants filed their reply thereto.  (Doc. No. 22.)

## LEGAL STANDARD

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the FAA.  9 U.S.C. § 2.  Enacted in 1925, "[t]he FAA generally provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 910, 916–17 (9th Cir. 2020) (quoting 9 U.S.C. § 2).  The FAA also confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them.  9 U.S.C. § 4.  However, despite the FAA's "liberal federal policy favoring arbitration agreements," *Epic Sys. Corp. v. Lewis*, __U.S.__, 138 S. Ct. 1612, 1621 (2018), it has by its own terms exempted some employment contracts for certain classes of workers.  *Rittmann*, 971 F.3d at 909.  Specifically, the FAA exempts from its scope the employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce."  *Id.* (citing *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 118–19 (2001) and 9 U.S.C. § 1).  An employment contract falling within the § 1 exemption is not subject to the FAA and either party to the contract may proceed with their claims in court.  *See id.*  The party opposing arbitration has the burden of proving that the exemption applies.  *Capriole v. Uber Techs., Inc.*, 460 F. Supp. 3d 919, 928 (N.D. Cal. 2020), *aff'd*, 7 F.4th 854 (9th Cir. 2021).

## DISCUSSION

**A.      Whether the FAA Governs the Arbitration Agreement**

The parties in this case dispute whether the § 1 exemption applies to plaintiff. [1]  (Doc.

---

[1]  In their pending motion, defendants argue that the arbitrator decides the gateway issues, not the court.  (Doc. No. 15-1 at 18.)  It is unclear whether the defendants are suggesting that the arbitrator must decide whether § 1's exemption applies.  In any event, it is clear that the court must "decide for itself" whether the § 1 exemption applies before ordering arbitration regardless of whether the contract at issue contains a "delegation clause" that gives an arbitrator authority to decide the initial questions of whether the parties' dispute is subject to arbitration.  *New Prime Inc. v. Oliveira*, __U.S.__, 139 S. Ct. 532, 537 (2019).

1   Nos. 15-1 at 12–18; 21 at 12.)  The exemption's residual clause—"any other class of workers

2   engaged in foreign or interstate commerce," 9 U.S.C. § 1—applies only to "transportation

3   workers," meaning workers who play a "necessary role" in the interstate transport of goods.  *Cir.*

4   *City Stores*, 532 U.S. at 121.  The Supreme Court has found that the § 1 exemption is to be

5   construed narrowly.  *Id.* at 106 ("The statutory context in which the 'engaged in commerce'

6   language is found, *i.e.*, in a residual provision, and the FAA's purpose of overcoming judicial

7   hostility to arbitration further compel that the § 1 exclusion be afforded a narrow construction.").

8   Thus, the exemption applies only if the class of workers is "actually engaged in the movement of

9   goods in interstate commerce."  *Id.* at 112 (citation omitted).  The Ninth Circuit has held that the

10  exemption applies to a "worker employed to deliver goods that originate out-of-state to an in-state

11  destination" regardless of whether the worker crosses state lines, so long as the goods "remain in

12  the stream of interstate commerce until they are delivered."  *Rittmann*, 971 F.3d at 910, 915, 919.

13          Recently, the Supreme Court held that for purposes of the § 1 exemption airline ramp

14  supervisors and agents were engaged in interstate commerce "when they handle[d] goods

15  traveling in interstate and foreign commerce, either to load them for air travel or to unload them

16  when they arrive."  *Sw. Airlines Co. v. Saxon*, __U.S.__, 142 S. Ct. 1783, 1792 (2022).  In

17  reaching its decision, the Supreme Court laid out a two-step framework for determining whether a

18  person belongs to a class of transportation workers engaged in foreign or interstate commerce.  *Id.*

19  at 1787, 1793.  First, a court must determine the class of workers to which plaintiff belonged.  *Id.*

20  at 1788.  A "class of workers" is defined by the "actual work" that those workers typically do on

21  the job, "not what [the employer] does generally."  *Id.*  Second, the court must determine whether

22  that class of workers is "engaged in foreign or interstate commerce" under § 1 of the FAA.  *Id.*

23  With this guidance in mind, the court will turn to the application of the two-step framework

24  outlined in *Southwest Airlines*.

25          1.      The Class of Workers to Which Plaintiff Belonged

26          As noted above, in determining the class of workers to which plaintiff belonged, the court

27  must consider the nature of plaintiff's work, not the nature of defendants' business.  *See Sw.*

28  *Airlines*, 142 S. Ct. at 1788.  In support of her position that she is a transportation worker for

purposes of § 1, plaintiff has filed her own declaration in which she states that as a warehouse operator for defendants, she "packaged medical devices and other items [d]efendant manufactured at its Tracy, California warehouse and loaded them onto trucks that were traveling to various destinations," including daily shipments to Nevada.  (Doc. No. 21-2 at ¶ 3.)  Plaintiff further explains:

> I spent 100% of my time stacking pallets and wrapping them in plastic saran wrap to load onto trucks.  Each work day, I would begin work at the warehouse "shipping dock" where the truck doors were located and where I loaded the trucks.  A different team of [d]efendant's workers prepared the pallets for me to arrange in the truck trailers for shipping to destinations in and outside of California.  Throughout my workday, those other employees delivered these packages to the shipping dock where I worked.

(*Id.* at ¶ 4.)  Plaintiff further declares:

> Defendant required me to arrange the pallets for placement in different sections of the truck trailer based on the customer and destination [d]efendant identified for me.  Every day, my supervisors assigned me to a specific truck door, which was a garage door that the truck trailers backed into.  This allowed me to walk straight onto the truck with the pallets.

(*Id.* at ¶ 5.)  In her opposition to the pending motion, plaintiff argues that loading pallets of packaged medical devices and supplies onto trucks destined for other parts of California and other states, including Nevada, qualifies her as a transportation worker under § 1.  In this regard, plaintiff highlights the Supreme Court's determination in *Southwest Airlines* that the worker's loading of cargo onto vehicles headed interstate had a sufficient nexus to interstate commerce to make the employee a transportation worker under § 1.  (Doc. No. 21 at 12.)

Of course, plaintiff must show more than that she individually was engaged in interstate commerce; she must demonstrate that she is a member of a *class of workers* engaged in interstate commerce.  *See Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 915 (N.D. Cal. 2020), *aff'd*, No. 20-15689, 2022 WL 474166 (9th Cir. Feb. 16, 2022) ("[T]he question posed by the exemption is 'not whether the individual worker actually engaged in interstate commerce, but whether the class of workers to which the complaining worker belonged engaged in interstate commerce.'") (citation omitted).  In their pending motion, defendants assert that the "class of workers" here is plaintiff's

putative class as defined in her FAC, and they argue that the transportation worker exemption does not apply here because many of the putative class members had nothing to do with the interstate transit of goods.  (Doc. No. 15-1 at 15–16) (citing *Muhammad v. Battle-Tested Strategies, LLC*, No. 2:21-cv-07225-VAP-JPR, 2021 WL 6298348, at *3 (C.D. Cal. Dec. 2, 2021), *appeal dismissed*, No. 22-55003, 2022 WL 1027000 (9th Cir. Mar. 18, 2022)).  The court does not find defendants' argument to be persuasive.

The transportation worker exemption analysis is distinct from the class action analysis. *See Fraga v. Premium Retail Servs., Inc.*, 583 F. Supp. 3d 275, 292 (D. Mass. 2022) (stating that the FAA § 1 exemption "jurisprudence stands wholly apart from our more familiar class action jurisprudence as Federal Rule of Civil Procedure 23 ('Rule 23') class actions came into being more than a decade later"), *appeal dismissed*, No. 22-1130, 2022 WL 18936016 (1st Cir. May 11, 2022), *and vacated and remanded on other grounds*, 61 F.4th 228, 292 (1st Cir. 2023).[2]  In addition, defining the "class of workers" as plaintiff's putative class for purposes of § 1 would amount to the "industrywide approach" that the Supreme Court has rejected, in light of the fact that the putative class broadly encompasses "[a]ll persons [d]efendants employed in California as hourly, non-exempt workers . . . ."  (Doc. No. 1-1 at 5–6); *see Sw. Airlines*, 142 S. Ct. at 1788–89 (rejecting plaintiff-respondent Saxon's argument that she belonged to a class of "airline employees" and instead defining her class in terms of the work performed by ramp supervisors like her).  Rather, the court must consider the "actual work" that those in plaintiff's position "typically carry out," that is, what those workers "frequently" do for the employer.  *Sw. Airlines*, 142 S. Ct. at 1788.

The question then is whether the interstate movement of goods was "a 'central part of the class members' job description.'"  *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 865 (9th Cir. 2021)

---

[2]  The court notes that some of the putative class members will likely not be entitled to the transportation worker exemption.  However, the court need not and does not reach this issue at this stage of the litigation.  *See Ortiz v. Randstad Inhouse Servs., LLC*, No. 22-cv-01399-TJH-SHK, 2023 WL 2070833, at *4 (C.D. Cal. Jan. 18, 2023) ("Whether the FAA's transportation worker exemption, also, applies to all of the putative class members, here, is beyond the scope of this motion."), *appeal filed*, Nos. 23-55147, 23-55149.

(citation omitted).  In his declaration, plaintiff's attorney David Spivak has attached a job description posted on defendants' website for "warehouse operator" at their Medline warehouse in Rialto, California, which indicates that interstate movement of goods was part of a warehouse operator's general duties.  (*See* Doc. No. 21-1 at 45–49.)  Notably, that job summary provides that "Warehouse Operators are responsible for operating machinery to move materials around a facility for shipping, processing and receiving," which "might include unloading, scanning, moving, staging, loading, locating, picking, relocating, and stacking product."  (Doc. No. 21-1 at 46.)

In support of their position that the § 1 exemption does not cover plaintiff, defendants have filed the declaration of Eric Epperson, the vice president of human resources for defendant Medline Industries, LP.  (Doc. No. 15-5.)  Therein, Mr. Epperson states that "[t]he bulk of the work performed by Warehouse Operators is nearly always in a Medline facility at which the Warehouse Operator either is putting away incoming inventory, picking product, packing it, re-packaging it, or staging it for shipment."  (*Id.* at ¶ 6.)  Mr. Epperson recognizes, however, that "some Warehouse Operators will, at times, be assigned to a Shipping or Receiving Department through which they might load pallets onto a trailer for shipment or unload pallets from a trailer with incoming merchandise . . . ."  (*Id.* at ¶ 5.)  The court finds that Mr. Epperson's declaration does not meaningfully contest that warehouse operators like plaintiff frequently load and unload pallets on and off trucks or are otherwise directly involved in the "shipping, processing, and receiving" of goods for defendant Medline.

Based on the uncontested evidence before the court, the court finds that plaintiff belongs to a class of workers who are regularly involved in the shipping, processing, and receiving of goods at defendants' warehouses, including by loading and unloading shipments.

    2.    <u>Whether Plaintiff's Class of Workers Is Engaged in Foreign or Interstate Commerce</u>

Turning to the second step set out by the Supreme Court in *Southwest Airlines*, this court must next determine whether the class of workers "play[ed] a direct and 'necessary role in the free flow of goods' across borders" and are "actively 'engaged in transportation'" of those goods

across borders via the channels of foreign or interstate commerce."  142 S. Ct. at 1790 (quoting *Cir. City Stores*, 532 U.S. at 121).

Attached as exhibits to attorney Spivak's declaration are defendants' website advertisements, one of which reveals that defendants' "dealer drop ship program" offers direct delivery of their products from their distribution centers to customers.  (Doc. No. 21-1 at 66) ("Our Dealer Drop Ship Program delivers products straight from our distribution centers to your customer's front door without adding storage space or carrying cost.").  Another advertisement reflects that defendants offered "[q]uick shipping from [its] 43+ nationwide distribution centers." (*Id.* at 70.)  As noted above, plaintiff has explained in her declaration that every day she packaged and loaded medical devices onto trucks traveling to various destinations, including daily shipments to Nevada.  (Doc. No. 21-2 at ¶ 3).

Defendants do not proffer any evidence contesting the accuracy of these exhibits or plaintiff's declaration.  Instead, defendants respond that plaintiff is not a transportation worker because (1) plaintiff did not personally deliver goods across state lines (Doc. No. 22 at 8); and (2) Medline is a manufacturer of health care products, not a transportation company (Doc. Nos. 15-1 at 13; 22 at 8).  Defendants' first point certainly misses the mark as the Supreme Court recently rejected a nearly identical argument.  *See Southwest Airlines*, 142 S. Ct. at 1791 (rejecting as too narrow Southwest Airlines' argument that "only workers who physically move goods or people across foreign or international boundaries—pilots, ship crews, locomotive engineers, and the like—are 'engaged in foreign or interstate commerce'").  Moreover, both of defendants' arguments entirely ignore the Ninth Circuit's decision in *Rittmann* in which that court held that package delivery drivers who performed the last leg of package shipment for Amazon—an online retailer, not a transportation company—were exempt from the FAA under § 1, even if the drivers

/////

/////

/////

/////

/////

themselves did "not cross state lines." 971 F.3d at 915.[3]  Based on the uncontested evidence before the court, the court finds that a central duty of warehouse operators such as plaintiff at Medline was to move pallets of goods in the flow of interstate commerce.  Like the employees in *Southwest Airlines*, the class of workers to which plaintiff belongs loaded and unloaded goods on and off vehicles that travelled interstate.  *See* 142 S. Ct. at 1793; *see also Saxon v. Sw. Airlines Co.*, 993 F.3d 492, 498 (7th Cir.), *aff'd*, __U.S.__, 142 S. Ct. 1783 (2022) ("Loading and unloading cargo onto a vehicle so that it may be moved interstate, too, is actual transportation, and those who performed that work were recognized in 1925 to be engaged in commerce."); *Ortiz*, 2023 WL 2070833, at *4 (finding that the plaintiff, a warehouse worker who used a pallet jack to move packages that arrived at the warehouse, was covered by the § 1 exemption).  In loading the goods onto such vehicles, the warehouse operators at Medline played a direct and necessary role in advancing those goods across state lines.  *See Saxon*, 993 F.3d at 502 ("The loading of goods into a vehicle traveling to another state or country is the step that both immediately and necessarily precedes the moment the vehicle and goods cross the border.").  Accordingly, the court concludes that plaintiff belonged to a class of workers that meets the definition of transportation worker under § 1.[4]

Because plaintiff is entitled to the § 1 transportation worker exemption, the FAA does not govern the Arbitration Agreement and plaintiff may not be compelled into arbitration or have her non-individual claims dismissed.  Accordingly, the court will deny defendants' pending motion to

/////

/////

/////

---

[3]  In *Southwest Airlines*, the Supreme Court expressly declined to address the Ninth Circuit's definition of a "transportation worker engaged in interstate commerce."  *See* 142 S. Ct. at 1789 n.2.  Therefore, this court must apply the binding precedent established by the decision in *Rittmann*.  *See Wynn v. United Parcel Serv., Inc.*, No. 21-cv-10029-CRB, 2022 WL 18912481, at *3 (N.D. Cal. Oct. 4, 2022) (stating that *Rittman* remains binding precedent in the Ninth Circuit after the Supreme Court's decision in *Southwest Airlines*).

[4] The cases relied upon by defendants (Doc. No. 15-1 at 15) predate the Supreme Court's decision in *Southwest Airlines* and thus have little persuasive value.

1  compel arbitration of plaintiff's individual claims and to dismiss plaintiff's non-individual

2  claims.[5]

3                                    **CONCLUSION**

4          For the reasons explained above, defendants' motion to compel arbitration of plaintiff's

5  individual claims and to dismiss plaintiff's non-individual claims (Doc. No. 15) is denied.

6          IT IS SO ORDERED.

7
   Dated:    **March 23, 2023**                    _____
8                                                  UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

   _____

27  [5]  Both parties raise a number of alternative arguments with respect to the pending motion.
   Because the court concludes that the FAA does not govern the Arbitration Agreement, the court
28  need not address those other arguments.

                                            10